# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

VERNORD LAVON BRIGHT, III,

      Petitioner,

v.                                Case No. 3:19-cv-1104-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

## I.   **Status**

     Petitioner, Vernord Lavon Bright, III, an inmate of the Florida penal system, initiated this action, through counsel, by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for sexual battery (Count One) and sexual battery with a deadly weapon (Count Two) for which he is serving a life term of incarceration. Id. Respondents filed a Response (Doc. 11) with exhibits (Docs. 11-1 to 11-19; Resp. Ex.). Petitioner filed a counseled Reply (Doc. 14). This case is ripe for review.

## II.     Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

2

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a

federal court cannot grant habeas relief unless the state court's adjudication of

the claim was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States," or "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted

"by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Harrington v. Richter, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." Id. [at 102] (citing Lockyer v. Andrade,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. See, e.g., Mitchell v.
> Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear

> error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged

> violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[1] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[2] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to

---

[1] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[2] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[3] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

---

[3] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. <u>Analysis</u>

### A. Ground One

Petitioner argues that "the state trial court erroneously excluded impeachment evidence of the alleged victim's inconsistent statements that

9

showed her motivation to lie that the sex was not consensual . . . ." Doc. 1 at 3. Petitioner contends that the victim had "a motive to lie about the sexual encounter with Petitioner Bright and claim it was rape rather than consensual sex. Her motive was to keep her mother from knowing that she engaged in consensual sex." Id. at 4. Petitioner states that after the incident, the victim told the Child Protection Team (CPT) nurse that "she had prior sexual encounters." Id. But, at a later deposition when her mother was present, the victim "denied ever having sex before the incident." Id. According to Petitioner, the "state trial court erroneously granted the State's motion to prohibit defense counsel from confronting Petitioner Bright's accuser without providing reasons and without the requisite balancing of the probative value against any prejudicial effect." Id.

Respondents argue that this claim is unexhausted because Petitioner failed to present the federal nature of this claim to the state court. Doc. 11 at 31. Alternatively, Respondents argue that Florida's rape shield law prohibits questioning victim-witnesses in sexual battery cases about their previous sexual activity. Id. at 31-32.

On direct appeal, Petitioner, through counsel, raised six claims. In Claim Three, he alleged that the "trial court erroneously excluded impeachment evidence of the alleged victim, which denied Mr. Bright's Sixth Amendment right to confront his accuser and denied his right to present a full and fair

10

defense." Resp. Ex. 6 at 46 (emphasis added). Petitioner cited to and analyzed Florida cases discussing the Sixth Amendment. See id. at 46-50. The state filed a response, Resp. Ex. 7, and Petitioner filed a counseled reply, Resp. Ex. 8. The First District Court of Appeal issued a written opinion per curiam affirming Petitioner's conviction and sentence on Count Two but reversing and remanding his conviction and sentence on Count One.[4] Resp. Ex. 9. As to this specific claim, the First DCA affirmed without comment. Id. Considering the record, the Court finds this claim is sufficiently exhausted. Nevertheless, as explained below, Petitioner is not entitled to relief on Ground One.

Petitioner's trial counsel sought to introduce the victim's statement made at her deposition that "she has never had sex" and the statement to "CPT and medical experts . . . [that] she had had consensual sex prior" "for impeachment purposes only." Resp. Ex. 3 at 16, 22 (defense counsel arguing, "The reason being the inconsistencies in the statement . . . . It is the simple fact that when asking her and she says, no, I have never. . . . [I]t is not to show that she had sex prior, it is to show . . . that it is an inconsistent statement that she makes.").

---

[4] Petitioner was originally convicted and sentenced for two counts of sexual battery with a weapon. Resp. Ex. 9 at 1. The First DCA reversed the judgment on Count One and remanded with instructions for the trial court to enter judgment for sexual battery and resentence accordingly. Resp. Ex. 9. The judgment and sentence for Count Two was affirmed. Id. The trial court modified Petitioner's judgment on Count One to sexual battery and resentenced Petitioner to a fifteen-year term of imprisonment. Id. at 61-68.

The prosecutor filed a motion in limine to prevent the introduction of the statements, and the trial court, after hearing argument from counsel, granted the motion.

Under Florida law, "[s]pecific instances of prior consensual sexual activity between the victim and any person other than the offender may not be admitted into evidence in a prosecution under s. 787.06, s. 794.011, or s. 800.04." § 794.022, Fla. Stat. However,

> such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease; or, when consent by the victim is at issue, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent.

Id.

Here, Petitioner has not alleged the applicability of either exception. Rather, Petitioner alleges that the victim had a motive to lie, which was to prevent her mother from knowing she engaged in consensual sex. First, this argument is speculative. Second, there is no indication that the evidence would have established a pattern of behavior similar to the behavior in this case. The evidence was irrelevant.

Petitioner relies on <u>McLean v. State</u>, 754 So. 2d 176, 182 (Fla. 2d DCA 2000), and <u>Jones v. State</u>, 577 So. 2d 606, 609 (Fla. 4th DCA 1991). These cases are distinguishable. In <u>McLean</u>, the key issue was whether the sexual contact with the victim was consensual. The doctor's proposed testimony was that the victim told him she had not had sex in over a year and that in his opinion someone who had not had sex for a long period of time might experience some soreness and swelling in the vaginal area after consensual sex. The Second District Court of Appeal found the testimony relevant to the issue of consent.

In <u>Jones</u>, the Fourth District Court of Appeal found that it "would be relevant to the victim's motivation to lie about whether she consented to sex with appellant to know that her family was extremely unhappy and not supportive of the results (pregnancy) of other non-marital sexual activity of their daughter and that the daughter might want to protect her recently revived relationship with her parents." 577 So. 2d at 609. The <u>Jones</u> decision did not involve § 794.022, Fla. Stat.

Here, the victim's statements were not permitted under § 794.022, and the fact that the victim made inconsistent statements about her prior sexual encounters with others was not relevant to whether the sexual contact with Petitioner was consensual. Since the victim's statements were not relevant to the issue of whether the sexual contact was consensual, this case is distinguishable from <u>McLean</u> and <u>Jones</u>. Notably, "the Sixth Amendment only

protects cross-examination that is <u>relevant</u>." <u>Jones v. Goodwin</u>, 982 F.2d 464, 469 (11th Cir. 1993) (quoting <u>Wasko v. Singletary</u>, 966 F.2d 1377, 1381 (11th Cir. 1992)). The victim's statements "would have neither contradicted nor impeached anything [the victim] said while on the witness stand." <u>Id.</u> Therefore, Petitioner's Confrontation Clause challenge fails, and the Court finds that the state appellate court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state appellate court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground One is denied.

### B. Ground Two

Petitioner contends that "the state trial court's remarks before pronouncing sentence are reasonably construed as affirmatively punishing Petitioner Bright for failing to show remorse and for maintaining his innocence, thus denying due process and fundamentally erring." Doc. 1 at 6 (emphasis omitted).

Respondents argue this claim is unexhausted because it was not raised as a federal claim on direct appeal. Doc. 11 at 35. Alternatively, Respondents argue that the trial court "was simply ruling on the defense's request for mitigation." <u>Id.</u> at 36.

14

Petitioner, through counsel, raised this claim on direct appeal, arguing that the trial court's statement at sentencing about Petitioner's lack of remorse violated his "due process rights." Resp. Ex. 6 at 55-58. In doing so, Petitioner cited to and analyzed at least one Florida case discussing the Fifth Amendment. See id. at 55. The state filed a response, Resp. Ex. 7, and Petitioner filed a counseled reply, Resp. Ex. 8. The First DCA issued a written opinion per curiam affirming Petitioner's conviction and sentence on Count Two but reversing and remanding his conviction and sentence on Count One. Resp. Ex. 9. As to this specific claim, the First DCA affirmed without comment. Id. Considering the record, the Court finds this claim is sufficiently exhausted. Regardless, as explained below, Petitioner is not entitled to relief on Ground Two.

At sentencing, Petitioner's counsel sought a downward departure sentence "based on [Petitioner's] age, the lack of education, the situation he was placed in and the consequences at the time. He had no appreciation of the consequences of this type of activity." Resp. Ex. 5 at 18-19. The State argued that Petitioner had not "shown remorse" and failed to present "valid reasons for the Court to deviate from the guidelines." Id. at 19-20, 21.

In response to the request for a downward departure, the trial court stated:

> With regard to the Defense's request to deviate from the guidelines, that is denied. I don't believe any one of the three grounds cited are applicable. I don't believe

15

Mr. Bright is too young to appreciate the consequences of his actions; in fact, he's very articulate here. His letter is extremely articulate. Quite frankly, based on the writing and his statements, it would indicate to me that he is very bright beyond the years that he actually went to school, grades that he completed. I would not find that this was something that was unsophisticated or an isolated – unsophisticated or an isolated incident for which he has shown remorse, that hasn't been demonstrated. And the jury clearly found that the victim was not a willing participant. Had they found that, then, I suppose, they would have found that there was consensual sexual act or acts and Mr. Bright would have been found not guilty or – well, just not guilty. I will find that he in – that he is a sexual predator.

And, Mr. Bright, it was clear to me that woman was absolutely traumatized, demoralized, greatly incapable of reciting what took place. And the people that saw her afterwards, when she ran from that shed naked to their house, clearly testified as to her state, which corroborated, I believe her testimony and her account of what took place. It is despicable and there's really not much else to say about it.

So I'm going to sentence you to life in prison on both counts I and II.

Id. at 23-24.

"[T]he Constitution forbids the exaction of a penalty for a defendant's unsuccessful choice to stand trial." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir. 1981). Here, the trial court's oral pronouncement was a denial of the downward departure and was not a ruling based on impermissible considerations. The remark about Petitioner's lack of remorse was made to address his counsel's request for a downward departure. See Roop v. State, 162

16

So. 3d 1165, 1166 (Fla. 2d DCA 2015) (although a trial court may not impose a sentence based on the defendant's failure to accept responsibility and lack of remorse, "it is evident that the trial court did not base its sentence on these factors but on the senselessness of and lack of justification for the killing").

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, the Court finds that the state appellate court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state appellate court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. As such, Ground Two is denied.

## C. Ground Three

Petitioner contends that the "state trial court abandoned its neutral role by allowing its strong feelings of antipathy towards Petitioner Bright [to] affect its sentencing decision." Doc. 1 at 8. Petitioner states that the trial court's "strong language – 'I believe her testimony and her account of what took place.[5] It is despicable' – evinced a favorable bias towards the alleged victim and a strong antipathy towards Petitioner Bright." Id. at 9.

---

[5] This particular quote is taken out of context. The judge stated: "And the people that saw her afterwards, when she ran from that shed naked to their house, clearly testified as to her state, which corroborated, I believe her testimony and her account of what took place."

Respondents argue this claim is unexhausted because it was not raised as a federal claim on direct appeal. Doc. 11 at 37. Alternatively, Respondents argue that the trial court's comments "were in response to the defense request for a greatly mitigated sentence, based on an assertion that [the victim] was a willing participant. Thus, there was no 'antipathy' toward Petitioner that would have blinded the judge." Id. at 38.

Petitioner, through counsel, raised this claim on direct appeal in terms of state law only. There is no indication in Petitioner's initial brief on appeal that he was raising a federal claim. Therefore, this claim is unexhausted and procedurally barred. Petitioner has failed to show cause to excuse the procedural default or resulting prejudice. Nor has Petitioner shown that a fundamental miscarriage of justice would result if the Court declines to address the claim on the merits. As such, Ground Three is due to be denied.

### D. Ground Four

Petitioner contends that the "life sentence without the possibility of parole is unconstitutionally cruel and unusual." Doc. 1 at 10. He argues that "the state trial court abused its discretion in not imposing a sentence that took into consideration Petitioner Bright's adolescent characteristics and reflected a proportional analysis that was consistent with the Eighth Amendment." Id. at 14. He contends that his sentence violates Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 567 U.S. 460 (2012). While recognizing that he

18

was not a juvenile at the time of the offenses (he was 19 years old), Petitioner argues that "the rationale in Graham[,] should be extended to all teenagers – not just those who are under the age of eighteen." Doc. 14 at 3. This claim was raised in Petitioner's direct appeal. The First DCA issued a written opinion per curiam affirming Petitioner's conviction and sentence on Count Two but reversing and remanding his conviction and sentence on Count One. Resp. Ex. 9. As to this specific claim, the First DCA affirmed without comment. Id. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications.

In Graham, the Supreme Court held that "the Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 75. Miller held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. "Neither Graham nor Miller have been extended to adult offenders." Humphrey v. Stewart, No. 2:15-cv-12638, 2015 WL 4967152, at *4 (E.D. Mich. Aug. 20, 2015); see also Hill v. Whitmer, No. 10-14568, 2020 WL 2849969, at *4 (E.D. Mich. June 2, 2020) ("[B]ecause the holdings in Graham and Miller were limited to juvenile offenders, the entitlement to a meaningful opportunity for release is unique to juveniles and does not extend to adult offenders."); Marshall v. State, 277 So. 3d 1149, 1151 (Fla.1st DCA 2019) ("[C]ourts have consistently

declined to extend the holdings of <u>Graham</u> and <u>Miller</u> and the applicability of the juvenile sentencing statutes to offenders eighteen years of age or older.").

Petitioner admits that he "is not a juvenile offender, and he has not been convicted of committing a homicide." Doc. 1 at 10. Petitioner requests that the Court extend <u>Graham</u> "to teenagers older than seventeen" based on state court decisions from Illinois, Kentucky, and Washington. Doc. 14 at 14. On habeas review, however, the Court finds that the state appellate court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state appellate court's adjudication based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. <u>See</u> <u>Termitus v. Sec'y, Dep't of Corr.</u>, No. 6:22-cv-345-CEM-LHP, 2023 WL 4052269, at *3 (M.D. Fla. June 16, 2023) (finding that the petitioner's "argument that <u>Miller</u> should be extended to young adults, without citation to any binding precedent, is insufficient to demonstrate that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"). As such, Ground Four is denied.[6]

---

[6] While the Court has concerns about sentencing a 19-year-old to life in these circumstances, there are no grounds for habeas relief under AEDPA.

**E. Ground Five**

Petitioner argues that his trial counsel was ineffective for failing to object when the trial court, after hearing his counsel tell the jury during opening statements they must presume the sexual encounter was consensual, instructed the jury that there was no presumption the sexual encounter was consensual. Doc. 1 at 15-16.

Petitioner, through counsel, raised this claim in his Florida Rule of Criminal Procedure 3.850 motion. The state court denied it, finding as follows:

> Defendant claims counsel was ineffective for failing to object to the Court's interjection into the proceedings. Specifically at issue is the Court's <u>sua sponte</u> instruction to the jury explaining that in a sexual battery case, there is no presumption that a sexual encounter is consensual. This instruction followed defense counsel's opening statement to the jury stating they were to begin with the presumption that the sexual encounter between Defendant and [the victim] was consensual. Defendant alleges that the Court's instruction was erroneous, confused the jury, and harmfully negated his defense. Defendant claims that had counsel objected to the instruction, either the instruction would not have been given or the issue would have been preserved for appeal. Absent counsel's alleged deficiency, Defendant claims the outcome of the proceeding would have been different or; alternatively, that counsel's ineffectiveness affected the fairness and reliability of the proceeding, thereby undermining confidence in the outcome.

> It is the trial judge's responsibility to ensure "that the jury is fully and correctly instructed as to the applicable law." <u>Foster v. State</u>, 603 So. 2d 1312, 1315 (Fla. 1st DCA 1992). It follows that where counsel

misstates the law or makes otherwise improper comments, the trial judge should correct same, whether in response to a party's objection or of the court's own accord. See Brooks v. State, 762 So. 2d 879, 899 n.26 (Fla. 2000) (trial court's sua sponte interruption of prosecutor's closing argument and curative instruction dealt appropriately with improper reference to biblical commandment).

Here, during defense counsel's opening statement, counsel twice stated to the jury that they were to begin with the presumption that the sexual encounter between Defendant and [the victim] was consensual. (Ex. F at 271:21-22; 274:25-275:4.) Immediately following this opening statement, the Court called a sidebar with both parties. (Ex. F at 275-76.) The Court reminded counsel that consent was an element of the charged offenses, but there was no presumption of consent that the State would have to overcome. (Ex. F at 275.) Defense counsel was unable to provide the Court with a sufficient legal basis for his assertion. (Ex. F at 276.) Thereafter, the Court instructed the jury that:

> [T]here is one presumption, and that is the presumption [] that the defendant is innocent until it's overcome by the evidence to the exclusion of and beyond a reasonable doubt. There is not a presumption as to whether or not this was a consensual encounter. The presumption does not start that it was. An element of the offense is the [State] has to prove that it was not consensual, but there is only one presumption at the beginning of the trial, and that is just that the defendant is innocent until or unless it's overcome by the evidence.

(Ex. F at 276.)

A plain reading of the dialogue indicates that the Court did not abandon its neutral role in sua sponte correcting defense counsel's misstatement of the law. Rather, the Court fulfilled its responsibility in correctly instructing the jury as to the applicable law, i.e. that consent is an element of sexual battery, which the State has to prove was not given, and that a defendant is presumed innocent until proven guilty by the evidence. The Court's sua sponte instruction was also consistent with the jury instructions given at the close of evidence:

> [T]o prove the crime of sexual battery upon a person 12 years of age or older, with the use of a deadly weapon, the State must prove the following four elements beyond a reasonable doubt: First, [the victim] was 12 years of age or older; second, Vernord Lavon Bright, the defendant, committed an act upon [the victim] in which the sexual organ of the defendant, Mr. Bright, penetrated or had union with the vagina of [the victim]; third, Vernord Lavon Bright, in the process used or threatened to use a deadly weapon; four, the act was done without the consent of [the victim].

(Exs. F at 676; G.) Instructions on lesser included offenses were also given, which likewise required the State to prove the sexual act was committed without [the victim's] consent or was done against her will. (Exs. F at 676-89; G.) Because the Court's sua sponte instruction was not improper, counsel cannot be deficient for failing to object to same. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (finding counsel cannot be deemed ineffective for failing to make a meritless objection).

Defendant has also failed to show he was prejudiced by counsel's failure to object to the Court's

interjected instruction and for failing to argue that the Court, by interjecting, abandoned its neutral role.[] See Gonzalez v. State, 990 So. 2d 1017, 1027 (Fla. 2008) (counsel's failure to object when trial judge instructed jury regarding mitigating and aggravating circumstances did not prejudice defendant where instruction did not change burden of proof and instruction was a correct statement of the law). Because the Court's instruction was an accurate statement of the law which did not shift the burden of proof, the Court maintained its neutrality, and confidence in the outcome of the trial is not undermined.

The cases upon which Defendant relies in support of his claim that the Court abandoned its neutral role are materially distinguishable in that they involved situations where the trial judge actively aided the prosecutor, or prompted the prosecution to either present certain evidence or take certain actions. See Rodgers v. State, 966 So. 2d 462, 464 (Fla. 1st DCA 2007) (in sua sponte amending defective information, trial judge transformed himself into role of prosecutor's auditor); Williams v. State, 901 So. 2d 357, 359 (Fla. 2d DCA 2005) (trial court departed from judicial neutrality by prompting state, during trial, to alter allegation in first count of sex offense to fit proof of offense); Evans v. State, 831 So. 2d 808, 811 (Fla. 4th DCA 2002) (trial court suggested that prosecution inquire into immigration status of defendant); Sparks v. State, 740 So. 2d 33, 36 (Fla. 1st DCA 1999) (trial court suggested impeachment evidence to prosecution).

In the instant case, the Court's interjection into the proceedings did not constitute an abandonment of its neutral role as the Court neither advanced the position of either party nor impeded Defendant from presenting his defense of consent. Rather, upon hearing defense counsel's misstatement of the law, the Court, after explaining its concern to counsel and

giving counsel the opportunity to provide support for his statement, proceeded to properly instruct the jury as to the applicable law. Moreover, the Court's instruction did not interfere with Defendant's defense of consent. The trial transcript clearly shows counsel pursued the issue of consent throughout trial. (Ex. F.) Further, during closing argument, counsel argued multiple times that the State failed to present evidence that the sexual encounter was not consensual. (Ex. F at 634; 647; 652-3; 656-57.) Because the Court's interjection into the proceedings did not constitute an abandonment of its neutral role or impede Defendant from advancing his defense of consent, Defendant has failed to show he was prejudiced by counsel's failure to object to the Court's interjected instruction regarding the legal presumption applicable in this case.

. . . .

For the foregoing reasons, Ground One is denied.

Resp. Ex. 11 at 27-31 (footnote omitted). Petitioner appealed, Resp. Ex. 12, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion, Resp. Ex. 16.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, Strickland and was not based on an unreasonable determination of the facts given the

evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Five is denied.

### F. Ground Six

According to Petitioner, although the victim testified at trial that the sexual encounter was not consensual, she "claimed in one statement that she 'blacked out' on the date in question and had no memory of the encounter." Doc. 1 at 21. Petitioner argues that "either [the victim] remembers the encounter and remembers it being nonconsensual or she does not remember the incident— but both versions cannot be true." Id. at 22. Petitioner contends that his trial counsel was ineffective for failing to properly impeach the victim with her prior inconsistent statements. Id.

Petitioner, through counsel, raised this claim in his Rule 3.850 proceeding. The state court denied it, finding as follows:

> Defendant claims counsel was ineffective for failing to impeach [the victim] with several prior inconsistent statements. Defendant specifically notes one prior statement by [the victim] that she blacked out and had no memory of the sexual encounter. Defendant alleges this was not consistent with her trial testimony that she did not consent to the encounter. Defendant claims that had counsel properly impeached [the victim], there is a reasonable probability that the result of the trial would have been different.
>
> First, Defendant's argument is premised on faulty logic. In his Motion, Defendant states that "clearly the alleged victim's prior statements were in

conflict with her trial testimony – either she remembers the encounter and remembers it being nonconsensual or she does not remember the incident – but both versions cannot be true." However, Defendant fails to consider [the victim's] statements, made both before and during trial, which indicate she remembered some of the encounter, specifically, waking up to Defendant having nonconsensual intercourse with her. (Ex. F at 364-67; 405-07; 423-24.)

Second, counsel cannot be deemed ineffective for failing to impeach a witness with every inconsistent statement; "[n]o prejudice result[s] from counsel's failure to present cumulative evidence of inconsistent statements." Green v. State, 975 So. 2d 1090, 1104 (Fla. 2008) (citing Maharaj v. State, 778 So. 2d 944, 957 (Fla. 2000)) (finding counsel was not ineffective for failing to impeach witness with one statement where counsel impeached witness with other inconsistent statements).

Here, the record shows counsel did impeach [the victim] with specific inconsistent statements, as well as calling her credibility into question throughout trial. For example, in his opening statement, counsel pointed out that the initial story [the victim] provided to authorities was that the last thing she recalled seeing before blacking out was the clock in the car saying 10:00. (Ex. F at 273.) Contrasting this prior statement was testimony elicited by counsel at trial that [the victim] did not think the car she was riding in had a clock:

> Q: Do you remember telling anybody that the last thing you remember is seeing the clock in the car being at 10:00?

> A: I didn't see a clock in the car.

> Q: Okay. So you never saw a clock in the car?

A: No, sir.

Q: But you don't remember ever telling anyone that you saw a clock in the car?

A: No.

Q: Okay. Do you remember telling the people at CPT, when you went down to do the examination, do you remember telling them the last thing you remember was 10:00?

A: No, sir.

(Ex. F at 407.) Counsel also elicited testimony from [the victim] that the last thing she remembered before she blacked out was sitting on some steps behind a house after getting out of the car. (Ex. F at 406-07.)

Later, counsel questioned witness, Kristi Prendergast, advanced registered nurse with Child Protection Team (CPT), regarding the history [the victim] provided during her medical examination:

Q: Right. And did she tell you that 10:00 was the last thing she remembered?

A: Yes, she did.

(Ex. F at 452.) Counsel also questioned Jacksonville Sheriff's Office Detective, Shannon Fusco, regarding the history provided by [the victim] during her interview:

Q: All right. And she described to you that the last thing she remembered was the clock in the car that she was

riding in saying 10:00, and that's as far as she could remember the night.

A: Yes.

Q: And that's the car that Whack Daddy was driving?

A: Yes.

Q: And she was certain that it was a clock in that car that said 10:00.

A: Yes. The clock in the car, yes.

Q: And then, she doesn't remember ever getting out of the car.

A: Not when I spoke to her, no.

Q: And the next thing she remembers is waking up in the garage or the shed.

A: That's correct.

(Ex. F at 584.) Thus, the record demonstrates counsel did impeach [the victim] with a prior inconsistent statement.

Additionally, throughout the trial, counsel called [the victim's] credibility into question. For example, counsel questioned [the victim] whether she remembered asking Defendant's friend, "Whack Daddy," to take her home. [The victim] testified she did remember asking him to take her home and recalled being outside of the car leaning over the driver's side window when this occurred. (Ex. F at 402-03.) [The victim's] credibility was called into question when counsel later asked Carlos "Whack Daddy" Ousley, if [the victim] told him she wanted to go home.

Ousley testified that at one point, he was alone in the car with [the victim] and asked her if she needed a ride home, but [the victim] declined the offer. (Ex. F at 599.) Ousley further testified that after [the victim] got out of the car, she and Defendant were talking to him through his driver's side window. He asked [the victim] if she was alright and if she was staying there with Defendant, to which she responded, "yeah." (Ex. F at 599.)

Finally, in his closing argument, counsel again reminded the jury of the inconsistencies in [the victim's] testimony and expressly questioned her credibility: "There is nothing, nothing that they can say that will take away the fact that it is [the victim's] credibility that is at stake here, based on her statements and her statements alone . . . ." (Ex. F at 659.)

Accordingly, the record shows it would have been clear to the jury from counsel's opening statement, the totality of [the victim's] testimony, the contrasting testimony given by other witnesses, and counsel's closing argument, that [the victim's] credibility was at issue and that [the victim] had made statements prior to trial that were inconsistent with the testimony she gave during trial. Assuming, arguendo, that counsel should have done more to impeach [the victim], Defendant still cannot establish prejudice. Even if trial counsel was deficient in failing to impeach [the victim's] testimony by showing each and every inconsistency, such is insufficient to undermine confidence in the guilty verdict. Consequently, Ground Two is denied.

Resp. Ex. 11 at 31-34. Petitioner appealed, Resp. Ex. 12, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion, Resp. Ex. 16.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of <u>Strickland</u>, and was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Six is denied.

### G. Ground Seven

Petitioner contends that his trial counsel was ineffective for "failing to object to the chemist's testimony about the symptoms from GHB drug ingestion and questions to the chemist, after the state trial court had earlier ruled that this testimony was prohibited." Doc. 1 at 23. Petitioner alleges that the trial court granted his motion in limine, which prohibited the State from introducing the chemist's (Carol Seagle) opinion regarding GHB ingestion symptoms and limited her testimony to the results of the victim's urine test. <u>Id.</u> Petitioner states that during the trial, the State proffered Seagle's testimony regarding the victim's cocaine test results, and the trial court then ruled Seagle could not testify about cocaine but could testify the victim was tested for GHB and none was found. <u>Id.</u>

Petitioner, through counsel, raised this claim in his second Rule 3.850 motion, and it was denied:

Defendant alleges counsel was ineffective for failing to object to testimony by the chemist and questions to the chemist, specifically regarding the symptoms of GHB ingestion. Defendant claims prior to trial, the Court granted his motion in limine which prohibited the State from introducing the chemist, Ms. Seagle's opinion regarding GHB ingestion symptoms and limited her testimony to the results of the victim's urine test. Defendant states during the trial, the State proffered Ms. Seagle's testimony regarding cocaine test results, and the Court then ruled Ms. Seagle could not testify regarding cocaine, but could testify she tested for GHB and found none. Defendant alleges the State did not adhere to the Court's ruling. Had counsel objected, Defendant contends there is a reasonable probability the jury would have returned not guilty verdicts.

The record refutes Defendant's allegations. Notably, Defendant's characterization of the content of the motion in limine and the Court's ruling on it is incorrect. The motion in limine requests Ms. Seagle's testimony regarding the testing for GHB be prohibited until a ruling on her qualifications is made; the motion makes no mention of her testimony regarding the symptoms of GHB ingestion. (Ex. F.) At the hearing on the motion in limine, the judge ruled any testimony regarding GHB and cocaine was prohibited, unless something were to occur at trial that would require a revised ruling. (Ex. G at 13, 26.)

At trial, based on defense counsel's opening argument and testimony he elicited from witnesses regarding the victim's memory problems and/or inconsistencies, the State argued Ms. Seagle's testimony regarding the GHB test and results should be presented to the jury. (Ex. H at 431.) Defense counsel argued his objection, and the Court overruled, allowing the State to "put it on." (Ex. H at 431-33.) Thereafter, the only unresolved issue regarding GHB was whether Ms. Seagle could testify regarding the

length of time GHB could remain present in a person's system. (Ex. H at 433.) Ms. Seagle's testimony regarding the symptoms of GHB ingestion was neither discussed nor prohibited. (Ex. H at 482-91.)

The record shows the Court did not rule that Ms. Seagle could not testify about the symptoms of GHB ingestion, contrary to Defendant's allegation. Any objection by counsel that Ms. Seagle had been prohibited from so testifying would have been meritless. Counsel cannot be deemed ineffective for not making a meritless objection. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010). Defendant is not entitled to relief on Ground One.

Resp. Ex. 17 at 21-22. Petitioner appealed, Resp. Ex. 18, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion, Resp. Ex. 19.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of Strickland, and was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Seven is denied.

## H. Ground Eight

Petitioner contends that his trial counsel was ineffective for "failing to request a mistrial following either (1) the alleged victim's subsequent testimony

after she initially refused to testify and/or (2) the prosecutor's closing argument highlighting this point." Doc. 1 at 24. Petitioner alleges that at the beginning of the trial, the State called the victim as a witness, but she refused to answer questions and was excused as a witness. Id. at 24-25. The victim was later recalled as a witness, and "she provided damaging testimony to" Petitioner. Id. at 25. According to Petitioner, during closing argument, the prosecutor used the victim's initial refusal to testify to bolster her credibility. Id.

Petitioner, through counsel, raised this claim in his Rule 3.850 proceeding. The state court denied it, finding as follows:

### a. Failing to request a mistrial after the victim's initial testimony

The record indicates that during the victim's testimony, she did not have an emotional outburst; rather, she became increasingly nonresponsive to the State's questioning. (Ex. H at 277-84.) After a series of questions to which [the victim] did not verbally respond, the judge intervened, asking the jury to exit the courtroom for a few minutes. (Ex. H at 284.) The judge suggested allowing the victim to take a break and resume testifying later. (Ex. H at 284-85.) When the jury returned, the judge briefly informed them [the victim] would be taking a break and they would be moving on to the next witness. (Ex. H at 286.) [The victim] completed her testimony later that day. (Ex. H at 357.)

Defendant cannot show prejudice as the victim's reticence was not so prejudicial as to vitiate the entire trial. See Thomas v. State, 748 So. 2d 970, 980 (Fla. 1999) (holding defendant was not entitled to mistrial on ground that state's chief witness suffered emotional

breakdown after state asked her to identify defendants at trial, where immediately after breakdown, judge stopped trial and removed jury and did not resume trial until witness had gathered herself completely); Hardwick v. Dugger, 648 So. 2d 100, 104-05 (Fla. 1994) (finding no prejudice where counsel did not move for mistrial after victim's cousin made an obscene gesture toward defendant in presence of jury and judge responded appropriately). Accordingly, had counsel moved for a mistrial, his request would not have been granted. "Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding . . . ." Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999).

**b. Failing to request a mistrial after the prosecutor's closing argument**

Defendant contends the prosecutor made statements in closing argument that constituted improper bolstering of the victim's credibility. "Improper prosecutorial 'vouching' for the credibility of a witness occurs where a prosecutor suggests that she has reasons to believe a witness that were not presented to the jury, or, stated differently, where the prosecutor implicitly refers to information outside the record." Thompson v. State, 273 So. 3d 1069, 1077 (Fla. 1st DCA 2019) (quoting Jackson v. State, 89 So. 3d 1011, 1018 (Fla. 4th DCA 2012)). "However, an attorney is allowed . . . to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006).

Defendant takes issue with the prosecutor's following statements:

> When I was questioning her one of the things you should weigh is her demeanor, and any time I asked her

anything kind of directly about [Defendant], she would just shift her eyes. She could not even say his name, she couldn't look at him, she was terrified. If you want to believe, and in order for you to believe that this girl came in and made this up, wouldn't it make more sense for her to go, oh, he did it, he did it, and these are all of the things he did, and she would be all about getting him in trouble, telling everything that he did. She didn't want to say anything. We had to drag it out of her. That's the demeanor she had. She didn't want to do this, she was terrified, traumatized and terrified, that was [the victim] on the stand, and that's the one that's been that way since he encountered her.

(Ex. H at 674.)

These statements do not constitute improper bolstering of [the victim's] credibility as the prosecutor "neither expressed personal belief nor referred to information or knowledge outside the record." Thompson v. State, 273 So. 3d at 1077. Rather, the prosecutor explained to the jurors why they should believe [the victim] and encouraged them to rely on their own impressions as to [the victim's] credibility based on her demeanor on the stand and the substance of her trial testimony. See id.; Williamson v. State, 994 So. 2d 1000, 1013 (Fla. 2008); Jackson v. State, 89 So. 3d at 1018-19.

Since the prosecutor's statements were not improper, a motion for mistrial based on same would not have been granted. Even if a portion of this statement could be construed as referring to information outside the record, it was not so prejudicial as to vitiate the entire trial. Therefore, counsel was not deficient for not filing a motion for

mistrial, as the motion would have been meritless. <u>See</u> <u>Teffeteller</u>, 734 So. 2d at 1023.

For the foregoing reasons, Defendant is not entitled to relief on Ground Two.

Resp. Ex. 17 at 24-25. Petitioner appealed, Resp. Ex. 18, and the First DCA per curiam affirmed the state court's denial without issuing a written opinion, Resp. Ex. 19.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of <u>Strickland</u>, and was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Eight is denied.

## I. Ground Nine

Petitioner contends that the "cumulative effect of defense counsel's errors deprived Petitioner Bright of a fair trial." Doc. 1 at 26. This claim was raised in Petitioner's counseled second Rule 3.850 motion. The trial court denied the claim:

Claims of cumulative error do not warrant relief where each individual claim of error is either 'meritless, procedurally barred, or [does] not meet the <u>Strickland</u> standard for ineffective assistance of counsel.' <u>Schoenwetter</u>, 46 So. 3d at 562 (quoting <u>Israel v. State</u>,

37

> 985 So. 2d 510, 520 (Fla. 2008)). Having found that
> Defendant's individual claims are either meritless or do
> not meet the <u>Strickland</u> standard of ineffective
> assistance of counsel, Defendant is not entitled to relief
> and Ground Three is denied.

Resp. Ex. 17 at 25.

As explained herein, none of Petitioner's individual claims warrant relief; thus, there is nothing to accumulate. <u>See</u> <u>Morris v. Sec'y, Dep't of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012). The alleged errors, neither individually nor cumulatively, deprived Petitioner of a fair trial or due process. Therefore, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, federal law and was not based on an unreasonable determination of the facts given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Nine is denied.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

    3.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

    **DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of September, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

OrlP-2/JAX-3 9/15
c:
Counsel of Record
Vernord Lavon Bright, III, #J54267

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.